[Crim. No. 4200. Second Dist., Div. Three. June 9, 1948.]

THE PEOPLE, Respondent, v. ROBERT RANER et al., Appellants.

William B. Neeley, Public Defender, and Robert H. Green for Appellants.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—By information, the defendants were charged with the crime of robbery while armed with a deadly

weapon, to wit, a sawed-off .22 caliber rifle. Defendants pleaded guilty to the charge of robbery but denied having been armed, and waived a jury trial on that issue. By leave of court, an application for probation was filed by each defendant. At the close of the hearing which was had on the applications for probation and for the purpose of fixing the degree of the crime, the trial judge found that defendants had been "armed with a deadly weapon to wit an unloaded pistol at the time of the commission of the offense." Thereupon, pursuant to section 211a of the Penal Code, which provides that "all robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree," the trial judge determined the offense to be robbery of the first degree.

It is affirmatively shown by the minutes of the court that probation was denied solely on the ground that section 1203 of the Penal Code deprived the court of power to grant probation under the circumstances. Section 1203 provides that "probation shall not be granted to any defendant who shall have been convicted of robbery . . . and who at the time of the perpetration of said crime . . . was armed with a deadly weapon . . . nor to a defendant who used or attempted to use a deadly weapon in connection with the perpetration of the crime of which he was convicted. . . ." In ruling on the applications for probation, the trial judge made the following statement: "This case appears to be one in which the past record and characteristics of the defendants would recommend the granting of probation, and were it not for the fact that the law in Penal Code Section 1203 prevents me from granting the application, I would do so. As far as the evidence shows the weapon used by the defendants in perpetrating the robbery was an unloaded .22 rifle, pointed at the victim and not used in any other manner; it was, in my opinion, none the less a deadly weapon within the meaning of Section 1203 of the Penal Code." The applications were accordingly denied, and both defendants were sentenced to the state prison for the term prescribed by law. Each defendant appeals from the judgment of conviction.

■ Appellants' initial contention is that the degree of the crime was determined erroneously since there was no evidence to support the finding that they were armed at the time of the commission of the offense. This argument must be considered with reference to the rule that a hearing for the

determination of the degree of an offense is not a trial in the technical sense, and is not governed by the same strict rules of procedure as a trial. (*People* v. *Gilbert*, 22 Cal.2d 522, 528 [140 P.2d 9] ; *People* v. *Williams*, 14 Cal.2d 532, 536 [95 P.2d 456] ; *People* v. *Rhodes*, 137 Cal.App. 385, 391-2 [30 P.2d 1026] ; *People* v. *Hall*, 105 Cal.App. 359, 362 [287 P. 533].)

█ It is true that the reporter's transcript, which was certified by the reporter to comprise "a full, true and correct transcript of the testimony offered or taken, evidence offered or received," etc., and was so stipulated by counsel, fails to include any testimony taken on this or any other issue. On the other hand, the statement of the trial judge quoted above, indicates that his finding was based upon evidence of some nature. Furthermore, during the hearing, counsel for defendant Raner stated that "This particular robbery was accomplished by means of pointing at the victim this .22 rifle, which the defendants maintain strenuously was not loaded. . . . In this particular instance it was used merely to cow the victim by pointing it at him, and no other use was even attempted to be made of it. It is true that the weapon itself was not found or secured until some days later, after the robbery, and the fact that it was unloaded on the particular occasion involved was dependent upon the statement or testimony of the two defendants themselves. . . ." These statements appear to have been accepted by counsel for defendant McRoberts as the basis for his argument also. A careful reading of the transcript as a whole clearly reveals that in argument both counsel either expressly or impliedly conceded that defendants were armed with an unloaded gun, and their remarks were addressed chiefly to the proposition that under the circumstances such an unloaded gun was not a "deadly weapon" within the meaning of the above-quoted provisions of the Penal Code. On the present record, even assuming that there was no other evidence before the court, we think there was a sufficient admission of the fact that defendants were armed to support the court's determination of the degree of the crime. (*In re Huson*, 126 Cal.App. 571, 574 [14 P.2d 845] ; *People* v. *Brown*, 140 Cal.App. 616, 620 [36 P.2d 194] ; *People* v. *Costa*, 108 Cal.App. 90, 93 [290 P. 891] ; *People* v. *Hammond*, 26 Cal.App.2d 145, 150 [78 P.2d 1172] ; cf. *People* v. *Paraskevopolis*, 42 Cal.App. 325, 330 [183 P. 585].)

The chief contention urged by appellants is that the court erred as a matter of law in finding that the defendants were

armed with a "deadly" weapon within the meaning of sections 211a and 1203 of the Penal Code. It is argued that under the undisputed facts, the court could have properly found the unloaded rifle to be at most a "dangerous" weapon; and that, although such a finding would support a conviction under section 211a for first degree robbery, it would not under the provisions of section 1203 deprive the trial court of the power to grant probation in the exercise of its legal discretion. We think the point is well taken.

Section 211a, it will be noted, refers in the disjunctive to "dangerous" *or* "deadly" weapons. Where used under circumstances similar to those in the present case, it has been repeatedly and uniformly held that an unloaded gun is a "dangerous" weapon within the meaning of this section. (*People* v. *Egan,* 77 Cal.App. 279, 284 [246 P. 337] ; *People* v. *Shaffer,* 81 Cal.App. 752, 755 [254 P. 666] ; *People* v. *Freeman,* 86 Cal.App. 374, 377 [260 P. 826] ; *People* v. *Coleman,* 53 Cal.App.2d 18, 28 [127 P.2d 309]. See, also, *People* v. *Seawright,* 72 Cal.App. 414, 418 [237 P. 796] ; *People* v. *Hall,* 87 Cal.App. 634, 636 [262 P. 50] ; *People* v. *Seaman,* 101 Cal. App. 302, 304 [281 P. 660] ; *People* v. *Raleigh,* 128 Cal.App. 105 [16 P.2d 752].) As was said in *People* v. *Egan, supra,* "It is a matter of common knowledge that in committing robbery pistols are frequently used as bludgeons rather than as firearms. The fact, therefore, that a person perpetrating such crime is armed with a pistol is enough to justify the conclusion that the pistol used by him is a 'dangerous' weapon within the meaning of said section 211a of the Penal Code, even though it be not loaded." (77 Cal.App. at p. 284.)

The finding of the trial court that the unloaded gun on the present facts was a "deadly" weapon, however, appears to be unique and unsupported by any authority of which we are aware. A holding that that finding is correct would eliminate all distinctions in meaning between the words "dangerous" and "deadly" as found in section 211a. That such a distinction exists, however, has long been established. "In *State* v. *Lynch,* 88 Me. 195 [33 A. 978], it was said that 'deadly' and 'dangerous' are not equivalents; that a dangerous weapon may possibly not be deadly, but that a deadly weapon, one which is capable of causing death, must be dangerous. . . ." (*People* v. *Seawright, supra,* at p. 419.) The distinction was also recognized in *People* v. *Coleman, supra,*

at page 28, where the following statement was made: "The evidence in the present case is amply sufficient to uphold a conviction of robbery. Proof that a defendant was armed is required only to fix the degree of the crime. To fix it as of the first degree, it is not necessary that the weapon should be a deadly weapon, if, in fact, it is a 'dangerous' weapon. (Pen. Code, § 211a.) Robbery committed with an unloaded pistol may be robbery of the first degree. The pistol need not be used or intended to be used as a firearm. If it is capable of use as a club or as an instrument to produce bodily harm it may be classified as a 'dangerous' weapon."

We are fully aware of the definition of the words "deadly weapon" which appears in section 3024 (formerly § 1168, subd. 2) of the Penal Code. Regardless of whether or not the sawed-off .22 rifle used in the present case is within the scope of this definition, a question as to which we here express no opinion, the applicability of the definition is restricted in terms to said section 3024 and has no bearing upon the meaning of the same words when used in other provisions of the Penal Code. (*People* v. *Petters,* 29 Cal.App.2d 48, 50 [84 P.2d 54]; *People* v. *O'Neal,* 2 Cal.App.2d 551, 558 [38 P.2d 430]; *People* v. *Caberera,* 104 Cal.App. 414, 416 [286 P. 176].)

"The question as to whether a given instrument is a dangerous or a deadly weapon depends for its solution primarily upon the attendant circumstances, as well as upon the use which has been made, or is proposed to be made, of the particular instrument. . . . It is manifest that a heavy club or a piece of gas-pipe in the hands of a child of tender years and proposed by it to be used as against a large and powerful man of mature years could scarcely be considered either as a deadly or a dangerous weapon; but reversing the situation as to parties, it is clear that the weapon might be not only dangerous, but deadly. Notwithstanding the fact that ordinarily and in and of itself the instrumentality may be in fact comparatively harmless, if, considering the attendant circumstances, together with the present ability of its possessor, the instrument is capable of being used in a deadly or dangerous manner, for the purpose of the particular occasion only, the character of the instrument may be so established." (*People* v. *Freeman, supra,* at pp. 375-6.) Thus, in appropriate circumstances, almost any instrument or object may become a deadly weapon. (See *State* v. *Huntley,* 91 N.C. 617, 620.)

It would seem clear, for example, that one who actually uses, or attempts to use, an *unloaded gun* as a bludgeon or club ordinarily is guilty of assault with a deadly weapon (see *People* v. *Pickens,* 61 Cal.App. 405 [214 P. 1027], and *People* v. *Maggio,* 140 Cal.App. 246, 252-3 [35 P.2d 369], wherein it does not appear whether or not guns so used were loaded). On the other hand, where there is no threat or attempt to use an unloaded gun as a bludgeon, and in fact it is used solely as a firearm pointed at another in a threatening manner, the crime of assault with a deadly weapon (Pen. Code, § 245), is not committed (*People* v. *Sylva,* 143 Cal. 62 [76 P. 814]; cf. *People* v. *Bennett,* 37 Cal.App. 324, 326 [173 P. 1004] and *People* v. *Montgomery,* 15 Cal.App. 315, 316 [114 P. 792]).

The distinction recognized in the cited cases between unloaded guns when used or threatened to be used as bludgeons, and when not so used, is the distinction between unloaded guns as deadly weapons and as merely dangerous weapons. It is a fundamental distinction which should be recognized in the absence of a controlling statutory definition of the word "deadly."

The precise point before us has not been decided in any case we have discovered. Our views, however, will be found consistent with the discussions of the meaning of the words dangerous and deadly in the numerous California cases. We reach the conclusion, therefore, that for the purposes of sections 211a and 1203, under the undisputed facts in the present case, the defendants were armed with a dangerous weapon but not with a deadly weapon. ■ The trial court's determination that the offense was robbery in the first degree was therefore correct (Pen. Code, § 211a), although based upon the erroneous premise that defendants were armed with a deadly weapon. Defendants were in no way prejudiced by this error (Pen. Code, § 1258), and we do not understand either of them to seriously argue that it is ground for reversal of the judgment.

■ On the other hand, the court's conclusion that under section 1203 it was powerless to grant probation was not only erroneous, since the prohibitory provisions of that section are applicable only where the defendant was armed with a deadly weapon, but was also prejudicial in that it deprived defendants of the substantial right, conferred by statute, to have their applications for probation considered and determined by the court in the exercise of its legal discretion. (*People* v. *Jones,*

87 Cal.App. 482, 498 [262 P. 361] ; *People* v. *Miller*, 112 Cal. App. 535, 539 [297 P. 40].)

As we find no error affecting the judgments of conviction, a new trial is unwarranted, but since the judgments pronounced were based upon and were in conformance with the erroneous denial of the applications for probation, they should be reversed for further proceedings on the conviction.

The judgments are reversed, with directions to the trial court to arraign the defendants again for judgment, and thereupon to hear and determine defendants' respective applications for probation, and thereafter to proceed with the matter in accordance with the views herein expressed.

Wood, J., and McComb, J. assigned, concurred.